(No. 47718.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. LARRY McCOY, Appellee.

*Opinion filed March 18, 1976.*

William J. Scott, Attorney General, of Springfield, and Bernard Carey, State's Attorney, of Chicago (James B. Zagel and Jayne A. Carr, Assistant Attorneys General, of Chicago, and Laurence J. Bolon, Assistant State's Attorney, and John J. Verscaj (law student), of counsel), for the People.

James R. Streicker, Deputy Defender, Office of State Appellate Defender, of Chicago (Lynn Sara Frackman, Assistant Defender, of counsel), for appellee.

MR. CHIEF JUSTICE WARD delivered the opinion of the court:

We granted the People leave to appeal from a judgment of the appellate court (29 Ill. App. 3d 601) holding that robbery is not a "crime of violence" under the Dangerous Drug Abuse Act (Ill. Rev. Stat. 1973, ch. 91½, par. 120.1 *et seq.*).

On December 17, 1970, the defendant, Larry McCoy, pleaded guilty in the circuit court of Cook County to an indictment for robbery and was placed on probation for 5 years. The defendant later was convicted on a theft charge, and on July 2, 1973, after a hearing, he was found to have violated the terms of his probation. At that time the defendant sought to elect to receive treatment for his drug addiction under the terms of the Dangerous Drug Abuse Act, but the judge, who was the judge who had placed him on probation, sentenced the defendant to a term of 5 to 15 years.

On the defendant's appeal the appellate court rejected the People's contention that robbery was a "crime of violence" making the defendant ineligible to elect to receive treatment under the Act. The court remanded the cause and ordered the trial court to conduct a hearing to determine whether the defendant otherwise was eligible to make the election under the Act and then to decide whether the court in its discretion would admit the defendant to the treatment program.

A basic purpose of the Dangerous Drug Abuse Act is "to provide diagnosis, treatment, care and rehabilitation for controlled substance addicts to the end that these unfortunate individuals may be restored to good health and again become useful citizens in the community." (Ill. Rev. Stat. 1973, ch. 91½, par. 120.2.) Under the Act a drug addict who is charged with or convicted of a crime, and who qualifies under the terms of the Act, may elect to undergo treatment for his addiction under the supervision of the Department of Mental Health as an alternative to

prosecution or probation unless "the crime is a crime of violence." The statute says in part:

> "An addict charged with or convicted of a crime is eligible to elect treatment under the supervision of the Department instead of prosecution or probation, as the case may be, unless (a) the crime is a crime of violence \*\*\*." Ill. Rev. Stat. 1973, ch. 91½, par. 120.8.

As originally enacted in 1967, the Act defined "crime of violence" as follows:

> " 'Crime of violence' means all offenses defined as forcible felonies in Section 2—8 of the Criminal Code of 1961 except for burglary \*\*\*." (Ill. Rev. Stat. 1969, ch. 91½, par. 120.3—8.)

Section 2—8 of the Criminal Code at that time provided, and it still provides:

> " 'Forcible felony' means treason, murder, voluntary manslaughter, rape, robbery, burglary, arson, kidnapping, aggravated battery and any other felony which involves the use or threat of physical force or violence against any individual." (Ill. Rev. Stat. 1969, ch. 38, par. 2—8.)

Thus, as first drawn and passed, the Act included robbery in its definition of "crime of violence," and one convicted of it was not eligible to elect for treatment.

Effective January 1, 1973, however, the statutory definition of "crime of violence" was amended to read:

> " 'Crime of violence' means the following crimes: treason, murder, voluntary manslaughter, rape, armed robbery, arson, kidnapping, aggravated battery, and any other felony which involves the use or threat of physical force or violence against another individual." Ill. Rev. Stat. 1973, ch. 91½, par. 120.3—8.

Thus, the legislature created a list of crimes for specific application in administering the provisions of the Dangerous Drug Abuse Act. The crimes on the list were nearly the same as those constituting forcible felonies under the Criminal Code, but the legislature in declaring the list of disqualifying crimes omitted burglary and selectively, we judge, substituted the specific offense of armed robbery for the more general crime of robbery. The

offense of armed robbery (robbery when "armed with a dangerous weapon" (Ill. Rev. Stat. 1973, ch. 38, par. 18—2)) is patently more dangerous to society and more socially intolerable than simple robbery.

The People nevertheless contend that the General Assembly intended the offense of robbery to remain "a crime of violence" when the 1973 amendment was enacted. They argue that robbery under its plain and common definition is a felony which involves the use of force or threat of force and therefore is within the language with which the amendment concludes: "*** and any other felony which involves the use or threat of physical force or violence against another individual." It is undeniable that robbery does involve the use of or threat of force. (Ill. Rev. Stat. 1973, ch. 38, par. 18—1; *People v. Patterson,* 52 Ill.2d 421, 424; *People v. Brooks,* 334 Ill. 549, 553.) But in considering whether robbery was to be included within the broad language with which the amendment ends, one must not read that language literally and in isolation. Rather it is to be read in the context of its being part of a statutory amendment that substituted the offense of armed robbery for robbery in a listing of disqualifying crimes. Learned Hand said:

> "Of course it is true that the words used, even in their literal sense, are the primary, and ordinarily the most reliable, source of interpreting the meaning of any writing: be it a statute, a contract, or anything else. But it is one of the surest indexes of a mature and developed jurisprudence not to make a fortress out of the dictionary; but to remember that statutes always have some purpose or object to accomplish, whose sympathetic and imaginative discovery is the surest guide to their meaning." *Cabell v. Markham* (2d Cir. 1945), 148 F.2d 737, 739.

The first canon of statutory interpretation is to construe a statute so as to ascertain and give effect to the legislative intent as expressed in the statute. (*People ex rel.*

*Kucharski v. Adams,* 48 Ill.2d 540, 543; *Inskip v. Board of Trustees,* 26 Ill.2d 501, 510.) It is of course true that the words used in a statute should be given their plain and commonly accepted meaning (*People ex rel. Carruthers v. Cooper,* 404 Ill. 395, 399-400) but "[w]here the spirit and intent of the General Assembly in adopting an act are clearly expressed and its objects and purposes are clearly set forth, courts are not bound by the literal language of a particular clause which would defeat the obvious intent of the legislature. Where verbal inconsistency appears, incongruous words may be modified, changed or rejected in order to arrive at a construction conforming to the otherwise clear legislative intention." *Continental Illinois National Bank & Trust Co. v. Illinois State Toll Highway Com.,* 42 Ill.2d 385, 395.

To give the construction the People seek would be, to deny effect to the legislative intent. It would render meaningless the legislature's careful omission of the offense of robbery and the substitution of the graver offense of armed robbery. This court has held it is presumed that an amendment of a statute is made to effect some purpose, and that effect must be given the law amended in a manner consistent with the amendment. *Acme Fireworks Corp. v. Bibb,* 6 Ill.2d 112, 117; *McLaughlin v. People,* 403 Ill. 493, 501; *Lindley v. Murphy,* 387 Ill. 506, 519; *City of Chicago v. Jewish Consumptives Relief Society,* 323 Ill. 389, 392; see also, 1A Sutherland, Statutes and Statutory Construction, sec. 22.30 (4th ed. 1972).

A purpose the legislature may have had in removing the disqualification from the offense of robbery would have been of course to broaden the eligibility for treatment and further the humane purpose of the Dangerous Drug Abuse Act to restore addicts to health and usefulness.

For the reasons given the judgment of the appellate court is affirmed.

*Judgment affirmed.*