THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *v.* LARRY BLAKE, Impleaded, Appellant.

(No. 71-1; ▮▮▮▮▮▮▮)

Second District—October 8, 1971.

Ralph Ruebner, of Defender Project, of Elgin, for appellant.

Philip G. Reinhard, State's Attorney, of Rockford, (Galyn Moehring, Assistant State's Attorney, of counsel,) for the People.

Mr. JUSTICE GUILD delivered the opinion of the court:

The defendant was jointly indicted with one Louis E. Watkins for the crime of burglary and subsequently tried before a jury which found him guilty. He was granted probation on the 12th of June, 1970. Three days later he was arrested for attempted burglary. Shortly thereafter a petition for revocation of probation was filed. On July 16th, 1970, his probation was revoked and he was sentenced to 1-3 years in the Illinois State Penitentiary.

It appears that on the 16th of December, 1969, the defendant in company with Watkins and a juvenile were observed driving up and down Forsythia Drive in Rockford. About 10:00 o'clock in the morning their car pulled into the driveway of a residence owned by the Fowlers. The neighbor across the street saw one of the three men get out of the car and apparently knock at the front door. She then observed one of them go into the house and shortly thereafter through a picture window of the Fowler house one of the men beckoned to the other two in the car who in turn entered the house through the front door.

The neighbor, Mrs. Jones, aroused her husband who was sleeping as

he worked nights. Mr. Jones went to the Fowler house and into the kitchen where he grabbed a bread board and went into the living room. The defendant and the other two men with him were found in the bedroom. They came out of the bedroom and when Mr. Jones asked them what they were doing there, they said they were looking for "Willie." He advised them no one lived there by the name of Willie and they left hurriedly. In the meantime, Mrs. Jones had called the police and the defendant and his two companions were arrested shortly thereafter.

It appears further that the Fowler house was unlocked and the testimony of Joanette Fowler, the thirteen year old daughter of the owners, was that she had made the bed in the master bedroom before she went to school; that the drawers to the dresser were closed; and that the jewelry box on the dresser was closed. Examination of the premises after the defendant and his companions were found in the bedroom disclosed that the mattress on top of the box springs had been moved six or eight inches off of the box springs, the bedding had been thrown back, and at least two drawers of the dresser were opened and the jewelry box was open.

The sole ground for reversal urged by the defendant is that the defendant was not proven guilty beyond a reasonable doubt. In support of this contention the defendant has cited and relies upon *People v. Hutchinson* (1964), 50 Ill.App.2d 238, 200 N.E.2d 416. In *Hutchinson* the defendant entered a house and went into the kitchen of the complainant. A neighbor saw him do so and saw him leave approximately five minutes later. Nothing was taken there and nothing was disturbed in the house. The instant case differs materially from the *Hutchinson* case contrary to defendant's contention, in that here, the defendant and his companions were apprehended in the house in their purported quest for Willie. Little opportunity apparently was left for them to take anything from the house as they were disturbed in their activity by Mr. Jones.

Defendant also cites *People v. Mc Combs* (1968), 94 Ill.App.2d 308, 236 N.E.2d 569 which may also be differentiated from the instant case in that Mc Combs was found in the house and charged with burglary. However, this court found that Mc Combs apparently had returned to the house "to resume a previously defined relationship with Barbara Berg, a consenting adult" when he was inadvertently interrupted. The sister of the consenting adult was sleeping in the consenting adult's bedroom and the defendant was apprehended therein after he had removed his trousers and shirt. It is to be further noted that in the Mc Combs case the defendant had waived a jury trial and the finding of guilty was reversed as this court held that there was no proof of felonious intent on the part of the defendant. That is not true of the instant case where the

evidence discloses that while the defendant was apprehended in the building his explanation was not believed by the jury and the evidence indicated that the ransacking of the bedroom had been interrupted by the neighbor who came into the house.

In *People v. Soznowski* (1961), 22 Ill.2d 540, 177 N.E.2d 1946 also cited by the defendant, the court held that "the evidence disclosed no overt act on the part of the defendant after his entering the dwelling directed toward accomplishing his alleged intention of stealing." Interestingly enough, in *Soznowski* the defendant was tried by the court without a jury upon an indictment for assault with attempt to commit rape and burglary. At the close of the State's evidence the trial court found the defendant not guilty on the count charging assault with attempt to commit rape and after hearing all the evidence found the defendant guilty of burglary. The Supreme Court further stated, in holding that the intent to commit burglary was not proven, "the fact that defendant was discovered in the middle of the night in a ladies' bedroom beating her, whatever the purpose of this act, would seem sufficient motivation for his flight and does not compel the conclusion that he entered the dwelling with intent to steal."

In the instant case the defendant testified that Louis Watkins went into the Fowler home for the purpose of finding Willie. It would appear that when Watkins did not find him the other two men, including the defendant, also entered the house. Watkins also testified that they were looking for Willie.

■■ We therefore have the situation where the entry into the dwelling was admitted, testimony adduced that the bed was disarrayed, the drawers opened, the jewelry box was open, and at this point the three men were interrupted by neighbor Jones. Obviously, the jury did not believe the defendants and it is not necessary to cite the multitudinous cases in this state where our courts have stated that the verdict of the jury will not be disturbed unless it is against the manifest weight of the evidence, nor will this court substitute its judgment for that of the jury in this case.

■■ Defendant's last contention is that the seven year old daughter of the complaining witness should have been called as a witness, and that the police officers should have taken finger prints on the dresser. Both of these contentions are without merit. It is the prerogative of the State as to what witnesses it will call. Had he chosen to do so, the defendant could have called this seven year old as a witness. This court knows of no law to the effect that finger prints must be taken where the defendants are interrupted in the commission of an offense, are apprehended in the house of another, and the evidence indicates that the

premises have been ransacked. It is the province of the jury to determine whether the defendants are guilty of burglary or whether they will believe that it was necessary for all three of the persons involved to enter the house for the purpose of finding someone named Willie.

Judgment affirmed.

MORAN, P. J., and ABRAHAMSON, J., concur.